TREMONT HOTEL CO. ET AL. V. ROSAMOND, MILAM & CO.

(No. 1192.)

MECHANIC'S LIEN, HOW SECURED.— In order to fix and secure a mechanic's lien, in addition to other statutory requirements, it is essentially necessary that a duplicate copy of the contract or bill of particulars be furnished to the party owing the debt.

APPEAL from Galveston county. Opinion by QUINAN, J.

STATEMENT.— This suit was brought on the 27th day of April, 1878, by Samuel L. Rosamond, Collin Milam and Robert A. Milam, copartners, composing firm of Rosamond, Milam & Co., plaintiffs below (appellees here), in the district court of Galveston county, againt the Tremont Hotel Company, a private corporation, organized under the general laws of the state of Texas, under an act concerning private corporations, approved April 23, 1874, whereof J. H. Burnett was president, a resident of Galveston, and having its principal office and property in the county and city of Galveston, to recover of said Hotel Company an account for brick, alleged to have been sold to the said Hotel Company between the 15th of September, 1877, and 1st of October, 1877, and due 1st of January, 1878, for $822.98, with interest at eight per cent. from 1st of January, 1878, furnished to said Hotel Company by plaintiffs to build a cistern on the property of said Hotel Company, lots 9, 10 and 11, in block 443, in the city of Galveston, and to foreclose their lien as material-men on the cistern built of their bricks; the metes and bounds of which are set out in the amended original petition, filed by leave in lieu of original petition, filed April 27, 1878, and filed June 10, 1878, and on the lots contained in the boundaries; and alleging that in order to recover and fix said lien all the steps required by law to fix the same, and the filing of the contract, sworn to (the same being verbal), in the office of the county clerk of Galveston county for record, on the 19th day of April, 1878, and the service of a copy on J. H. Burnett, president, on the same day; and that the contract was duly recorded by the clerk on the 23d day of April, 1878, praying citation and for judgment against the Hotel Company for the sum of $822.98, and eight per cent. interest from 1st of January, 1878; and for a decree foreclosing their lien on the cistern and the lots contained within the bounds occupied by the cistern, as set out; for an order of sale of said property and such

other orders as the law directs. June 15, 1878, the defendant disclaimed and alleged the purchase of the property May 28, 1878, by Marx & Kempner, and the divesting of their title by the sale to them under trust deed set out.

October 22, 1878, Marx & Kempner came in and filed answer, claiming the property as theirs, bought by them under trust deeds, and demurred to the plaintiffs' petition, and claimed to have been innocent purchasers, in good faith, without notice of plaintiffs' claim; admitted the existence and organization of the Hotel Company, adopted the statements in the answer of the Hotel Company, and admitted and set up their purchase on the 28th of May, 1878, under trust sales.

October 28, 1878, plaintiff filed first supplemental petition and excepted to the answers of Marx & Kempner, and set up the filing and record of the claim, 19th of April, 1878, and the institution of their suit, 27th of April, 1878; and at that time the Hotel Company was the actual owner of the Tremont Hotel property; and if the title was ever divested, the same was divested thereafter on the 28th of May, 1878, more than a month after suit filed, and prayed that said answer be stricken out, and denied that, at the time of the filing of said claim, 19th of April, 1878, or the filing of the suit, 27th of April, 1878, the said Marx & Kempner had any right or title to the Tremont Hotel property, as owners, mortgagees or lien holders, and purchased the same on the 28th of May, 1878, with knowledge, actual and constructive, of plaintiffs' lien, and allowed in their purchase price for the liquidation of said lien, alleging the value of the property at $100,000. That the lien of Ball, Hutchings & Co. was but $20,000, and that the pretended lien to secure $100,000 of bonds, dated May 1, 1877, was not an actual *bona fide* debt, and said bonds were not negotiated, and not due for five years, and only a small amount of interest, not exceeding $10,000, was due, and that the note to the Texas Banking & Insurance Company for $23,500 was at no time a lien on the property of the Hotel Com-

pany as against these plaintiffs' claim, and prayed oyer of the deeds of trust under which defendants claimed said property; and if defendants purchased they purchased at public auction, and were not innocent purchasers in good faith, and denied all the allegations of the answer, and prayed judgment enforcing their lien as claimed in their original amended petition, and for costs.

November 2, 1878, the defendant, the Tremont Hotel Company, filed amended original answer, being a general denial of plaintiffs' allegations. The case was tried by jury, asked for by plaintiffs, December 27, 1878, and the jury found a verdict for plaintiffs for $888.28 against the Tremont Hotel Company, and we further find said sum to be a lien on the cistern described in plaintiffs' petition; and judgment was entered on the verdict in favor of plaintiffs as a firm for the sum so found by the jury against the Tremont Hotel Company, with interest thereon at eight per cent. from date of judgment, December 27, 1878, and a decree foreclosing the lien on the cistern, describing it by metes and bounds, as in the petition, and against all defendants, and order of sale to issue, sheriff to put purchasers at sale in possession, and such purchaser to have right to remove the same thirty days from date of purchase, and execution against the Tremont Hotel Company for any balance unpaid.

Marx & Kempner moved for new trial December 28, 1878, and amendment. The Tremont Hotel Company also moved for new trial December 28, 1878, and amendment; which motions were overruled, and the Tremont Hotel Company excepted and gave notice of appeal in open court, and the motion of Marx & Kempner was also overruled, and they excepted and gave notice of appeal in open court, and all defendants assigned errors, 14th of February, 1879, gave appeal bond in the sum of $1,900, 13th of February, 1879, and brought the case to this court and assign errors.

OPINION.— The above is a very full statement of the case. The testimony is embodied in the opinion. The assign-

ments of error are sixteen, relating chiefly to the judge's charges, and the sufficiency of the testimony, presenting questions whether a lien could be created on a hole in the ground and brick put in it; whether such a lien would be superior to the previous liens fixed upon the land.

This suit was brought by Rosamond & Milam Bros. against the Tremont Hotel Company and Marx & Kempner, for the recovery of a debt due by the Hotel Company to them for brick furnished for building a cistern on their property, and to enforce a "mechanic's" lien thereon, Marx & Kempner being made parties as the present owners of the property. The mechanic's lien law of 1876 declares that any firm who shall furnish material to erect any improvement shall have a lien thereon, and on the land necessarily connected therewith, to secure payment for the material.

"If the contract, order or agreement be verbal (in order to secure the lien), a bill of particulars of the material must be made under oath, one to be delivered to the county clerk and recorded, and a duplicate to be furnished to the party owing the debt."

To entitle the plaintiffs to a recovery it was necessary to establish the fact that the Tremont Hotel Company was the party owing the debt. The proof in the case shows that the brick were sold to Burnett & Kilpatrick. The testimony of Milam, one of the plaintiffs, is that the brick were furnished to Burnett & Kilpatrick in September, 1876, who were the ostensible owners of the Tremont Hotel; that he made out a copy of the account and delivered it to J. H. Burnett, who said it was correct, and he promised to pay it as soon as collected from the state penitentiary. He did not know who were the actual owners of the property when the brick were sold. What he meant by "ostensible owners" was, that Burnett & Kilpatrick were in charge of and running the hotel. He did not contract with Burnett as president of the Hotel Company; did not know who constituted the company. When he first presented the bill after it became due, it was made out against Burnett & Kilpatrick. He had then been selling brick to Burnett &

Kilpatrick for use on other property. When he made out the bill to fix the lien, he made this bill out against the Hotel Company, under the advice of a lawyer.

Burns, a witness for the plaintiff, proved that the brick were brought into the cistern; that he counted them for Burnett & Kilpatrick. Look, for the plaintiff, also testified that he built the cistern for Burnett & Kilpatrick, and they paid him for the work. Kilpatrick, for the defense, testified that he was a member of the firm of Burnett & Kilpatrick; that that firm engaged in building the Tremont Hotel, and were bound to construct the cistern; that his firm bought the brick from plaintiffs, and contracted to pay for them, and intended to do so; that Milam dealt with them for the brick, and had sold them other brick for the hotel, for which they had paid them. When the brick were bought, J. H. Burnett was president of the Tremont Hotel Company for the year 1877. The firm of Burnett & Kilpatrick had agreed with the Hotel Company to furnish the cistern at their own expense, as they had previously contracted to build it.

Burnett & Kilpatrick were the owners of the hotel property in April, 1877. In April, 1877, they conveyed the property to the Tremont Hotel Company. It was then subject to a trust deed to secure a debt to Ball, Hutchings & Co., made by Burnett & Kilpatrick in August, 1876.

The Hotel Company executed a trust deed upon it in May, 1877, to secure a debt to the Texas Banking & Insurance Co. Under these trust deeds the property was sold in May, 1878, and purchased by Marx & Kempner.

It is very clear from this testimony (and we have given all which bears upon the subject) that the plaintiffs did not establish their demand against the Tremont Hotel Company. The Tremont Hotel Company was not the party owing the debt. And unless the duplicate copy of the account for material be delivered to "the party owing the debt," no lien upon the property is fixed or secured under the law. The delivery of the copy of the account to J. H.

Burnett as president of the Hotel Company in April, 1878, did not make the Hotel Company liable for Burnett & Kilpatrick's debt, or fix any lien upon the property.

It is suggested by the plaintiffs that the Hotel Company became liable for the debt because Burnett & Kilpatrick bought the property from Runga, Sealy & Rosenburg, and contracted to build the cistern, and conveyed the property to the Tremont Hotel Company, and that Burnett & Kilpatrick were the Hotel Company. There is no proof of this fact (if it were material). It is said, too, that Mr. Willis told Milam his debt was perfectly safe to his firm on account of the statutory lien. But this was but his expression of opinion, and not as president of the Insurance Company. And so it is said that Burnett, when president of the company, acknowledged the debt, but he did not so acknowledge it as the debt of the company, nor could his acknowledgment so made bind the company to pay Burnett & Kilpatrick's debt.

There is not a scintilla of proof in the transcript to show that the Hotel Company, in any way, became bound to pay this debt of Burnett & Kilpatrick's.

It was manifest error, therefore, for the judge to charge the jury that: "It would make no difference whether the company made the contract or not by authorized agents if the company knew at the time the bricks were bought that they were purchased for the use of the cistern, and were used by the company, and by subsequent action ratified the contract and recognized it as a valid obligation thereon," in that the same was not justified by the evidence. Neither their knowledge of the purchase nor of their use in the cistern, nor the use of the cistern, could make them liable, and there is no proof of any ratification or recognition of the obligation as binding upon them. And for this cause the judgment should be reversed.

Whether a lien could be created upon the brick wrought into a cistern, built of brick in the ground, a permanent fixture if anything can be considered such, need not be

determined, but the question arises: If they can be removed — all under the state of case presented here, forming but a part of the whole work, we could see no objection to the enforcement of the lien upon them because of the liens or conveyances of the property previous to the time when they were so wrought in. The conveyance of real property is a conveyance of it from the center to the zenith; but it is not perceived that it would be a violation of any vested right acquired by Ball, Hutchings & Co., or the Texas Banking & Insurance Co., by their conveyances, that the builder of improvements upon the property subsequently should have a lien upon those improvements for the value of the material used in making them.

It does not lessen the security as it was conveyed to them, and would seem not objectionable if the material or the improvement can be removed without injury to the estate as originally conveyed.

It is not necessary to consider the other errors assigned. What we have said is applicable more or less to all of them, and is decisive of the case.

REVERSED AND REMANDED.